UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

BRAYAN C. C.,[1]
[A# 221-435-581]

           Petitioner,

    v.

WARDEN OF THE CALIFORNIA CITY
CORRECTIONAL CENTER, et al.,

           Respondents.

No. 2:26-cv-00641-TLN-JDP

**ORDER**

This matter is before the Court on *pro se* Petitioner Brayan C. C.'s ("Petitioner") Petition for Writ of Habeas Corpus ("the Petition").[2]  (ECF No. 1.)  Respondents filed a combined Motion to Dismiss and response.  (ECF No. 6.)  For the reasons set forth below, Respondents' Motion to Dismiss is DENIED, the Petition is GRANTED, and Respondents are ordered to IMMEDIATELY RELEASE Petitioner.

---

[1]    As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits Petitioner's full name, using only his first name and last initial, to protect sensitive personal information.  *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2]    The Court liberally construes pro se filings.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

1

## I.    FACTUAL AND PROCEDURAL BACKGROUND[3]

Although Petitioner is not a U.S. citizen, he has lived in the United States for nearly two decades.  (ECF No. 1 at 5.)  Petitioner states he entered the United States in June 2007, when he was just five years old.  (*See id.*)  Since then, Petitioner has grown up here.  He is now a father to U.S. citizen children, including a young son who requires occupational and speech therapy services for developmental delays.  (*Id.*)  Petitioner has been the primary financial provider and emotional support for his family.  (*Id.*)

On October 17, 2025, Petitioner was arrested in connection with traffic-related offenses, including driving without a license.  (*Id.*)  The traffic offenses were non-violent misdemeanors.  (*Id.*)  Petitioner has no history of violent criminal conduct or felony convictions.  (*Id.*; ECF No. 6-2 at 3.)  As a result of his arrest, Petitioner was transferred to the custody of U.S. Immigration and Customs Enforcement ("ICE") on October 20, 2025.  (ECF No. 1 at 5; ECF No. 6-2 at 3.)  Petitioner has been detained ever since.  (ECF No. 1 at 5.)  In nearly five months of detention, Petitioner has not been provided a bond hearing.  (*Id.*)

After detaining Petitioner, Respondents instituted removal proceedings against him; those proceedings are still pending.  (*Id.* at 17–18; ECF No. 6-1.)

Petitioner challenges the lawfulness of his civil detention through the Petition.  (ECF No. 1.)  In opposition, Respondents filed a Motion to Dismiss and response.  (ECF No. 6.)  The Court now considers Respondents' motion and the merits of the Petition.

## II.    STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the

---

[3]    The facts are not disputed.

Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

### III.   ANALYSIS

Petitioner claims his detention violates the Immigration and Nationality Act ("INA") and the Fifth Amendment Due Process Clause.  (ECF No. 1 at 8.)  The Court addresses each claim in turn.

### A.   Immigration and Nationality Act

Petitioner claims his detention without a bond hearing violates the INA.  (ECF No. 1 at 8.)  In opposition, Respondents contend Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2), which does not provide for a bond hearing.  (ECF No. 6 at 2.)

Under the INA, § 1226(a) "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal."  *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022).  Section 1226(a) provides the Government broad discretion whether to release or detain the individual and it provides several layers of review for an initial custody determination.  *Id.*  It also confers "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change."  *Id.* at 1202.  Conversely, § 1225(b)(2) mandates detention during removal proceedings for "applicants for admission" who are "seeking admission" and does not provide for a bond hearing.

Until the U.S. Department of Homeland Security changed its policy in July 2025, the Government consistently applied § 1226(a), not § 1225(b)(2), to noncitizens residing in the United States who were detained by immigration authorities and subject to removal.

The vast majority of courts across this Circuit, including this one, have repeatedly rejected Respondents' argument on the applicability of § 1225(b)(2) to persons like Petitioner who reside in the United States.  *See Morales-Flores v. Lyons*, No. 1:25-CV-01640-TLN-EFB, 2025 WL

3552841, at *3 (E.D. Cal. Dec. 11, 2025) (explaining this Court's reasons for taking this position and collecting cases). "These courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [Petitioner], living in the interior of the country." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases).

In comparison, "[t]he government's proposed reading of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." *Lepe v. Andrews*, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) (collecting cases).

For these reasons and consistent with this Court's numerous prior rulings, the Court finds Petitioner is not an applicant for admission subject to mandatory detention under § 1225(b)(2). Rather, Petitioner's detention is governed by § 1226(a) and he is entitled to the process required by that provision including, at minimum, a bond hearing. Over nearly five months of detention, Respondents did not provide any hearing. Therefore, Respondents violated § 1226(a) of the INA.

### B. Fifth Amendment Due Process Clause

Petitioner also claims that his detention violates due process. (ECF No. 1 at 9.) The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). These due process rights extend to immigration proceedings and detention. *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989);

4

*Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

### i. Liberty Interest

As for the first step, the Court finds Petitioner has a protectable liberty interest. "[F]reedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" *Hernandez*, 872 F.3d at 993 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025). Liberty interest may be strengthened over time. *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

Petitioner has a clear liberty interest here. He has resided in the United States for nearly two decades and built a life here since he was a minor. Even if he is removable, or his liberty is revocable, his liberty is still protected by due process. *See Hernandez*, 872 F.3d at 993; *Zadvydas*, 533 U.S. at 693.

In opposition, Respondents argue Petitioner has no liberty interest because his detention is mandated by statute. (ECF No. 7 at 2.) However, as the Court has already found above, Petitioner is subject to § 1226(a), which does not mandate detention.

Thus, Petitioner maintains his protected liberty interest protected by due process. The Court next turns to the procedural safeguards that were owed to Petitioner.

### ii. Procedures Required

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). As set

forth below, the Court finds Petitioner has established his due process rights were likely violated.

First, as explained above, Petitioner has a substantial private interest in his own liberty that is unquestionably affected by Respondents' actions detaining him. The amount of time Petitioner spent at liberty underscores the gravity of its loss. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) ("The lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty.") Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention. *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any hearing, either pre- or post-detention. Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." *Hernandez*, 872 F.3d at 994; *see also R.D.T.M.*, 2025 WL 2617255, at *4 ("Civil immigration detention, which is nonpunitive in purpose and effect is justified when a noncitizen presents a risk of flight or danger to the community.") (cleaned up). Here, Petitioner is not subject to a final order of removal, indeed, there were no removal proceedings pending against him at the time of his detention. (*See* ECF No. 1 at 17–18; ECF No. 6-1.) And Respondents do not contend Petitioner is a danger or a flight risk. (*See* ECF No. 6.) Thus, the Court finds there is a serious likelihood Petitioner could be erroneously deprived of his liberty interest. Without any procedural safeguards to determine whether his detention was justifiable, the probative value of additional procedural safeguards is high. *R.D.T.M.*, 2025 WL 2617255, at *4.

Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). The cost and time of procedural safeguards are minimal here. Notice and custody determination hearings are routine processes for

Respondents.  Indeed, they are the very processes required under 8 U.S.C. § 1226(a).  Any delay in detention (if justified) for the time to provide notice and a hearing would have been minimal.  It would also be less of a fiscal and administrative burden for Respondents to return Petitioner home to await a determination on his immigration proceedings than to continue to detain him.  *See Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T]he Ninth Circuit has recognized that the costs to the public of immigration detention are staggering.").

At minimum, due process required Respondents to provide a custody determination hearing to Petitioner.  Respondents have not provided any substantive opposition to the contrary.  (*See* ECF No. 6.)  Yet, in over five months of detention, Respondents did not provide any hearing to Petitioner, either pre- or post- deprivation.  Therefore, Respondents violated the Fifth Amendment and Petitioner's procedural due process rights.

**IV.     CONCLUSION**

Petitioner is detained in violation of the Constitution and federal law and he must be released.[4]  *See* 28 U.S.C. § 2241(c)(3).  Accordingly, IT IS HEREBY ORDERED:[5]

1.  Respondents' Motion to Dismiss (ECF No. 6) is DENIED.

2.  Petitioner's Petititon for Writ of Habeas Corpus (ECF No. 1) is GRANTED.

3.  Respondents must IMMEDIATELY RELEASE Petitioner BRAYAN C. C. (A# 221-435-581).  Respondents shall not impose any additional restrictions on him, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing.  At the time of release, Respondents must return all of Petitioner's documents and possessions.

---

[4]     Respondents ask the Court to hold this case in abeyance until the Ninth Circuit rules on *Rodriguez Vasquez v. Bostock*, 779 F.Supp.3d 1239 (W.D. Wash. 2025), which may be dispositive of issues in case.  (ECF No. 6 at 2.)  The Court declines to hold this case in abeyance.  As this Court has said previously, it will not delay issuing relief on the prospective chance a pending appeal could change the outcome of one claim.

[5]     Petitioner also sought an award of attorney's fees and costs under the Equal Access to Justice Act.  (ECF No. 1 at 10.)  The Court will consider any timely filed request for fees and costs on a properly noticed and supported motion.

4. **Respondents must file a notice of compliance with this Order by March 16, 2026.**

5. To avoid further irreparable harm and protect the public interest, Respondents are ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where: (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk.  At any such hearing, Petitioner shall be allowed to have counsel present.

6. The Clerk of the Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

Date: March 13, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

8